# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

### No. 13-079V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| BISSER A. BORISOFF and MELANIE B. BORISOFF, Parents of N.B., a minor, | \* \* \* \* | Filed: December 1, 2015 |
| Petitioners, | \* \* | Entitlement; Table Injury; Entitlement Conceded; Decision by |
| v. | \* \* | Stipulation; Damages; Measles-Mumps-Rubella ("MMR") |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | \* \* | Vaccine; Idiopathic Thrombocytopenic Purpura ("ITP"). |
| Respondent. | \* \* \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Ronald C. Homer*, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for Petitioners.

*Glenn A. MacLeod*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION FINDING ENTITLEMENT AND AWARDING DAMAGES [1]

On January 30, 2013, Bisser and Melanie Borisoff, as parents of N.B, a minor, filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioners alleged that N.B. received a measles-mumps-rubella ("MMR") vaccine on February 2, 2010, and then sustained the first manifestation or onset of idiopathic thrombocytopenic purpura ("ITP") within the time period set forth in the Vaccine Injury Table. Petitioners further alleged that N.B. experienced the residual effects of this injury for more than six months.

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (Dec. 17, 2002) (current version at 44 U.S.C. § 3501 (2014)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

In her Rule 4(c) report, filed on September 11, 2013 (ECF No. 22), Respondent conceded that Petitioner's claim was compensable under the Act. Respondent specifically stated that "the facts described in the petition and documented in the accompanying medical records satisfy the criteria set forth in the Table, and accompanying QAI, for demonstrating a presumptively vaccine-related thrombocytopenic purpura." ECF No. 22 at 5. Respondent also stated that "the medical records establish that N[.B.]'s ITP continued for six months following his vaccination and the onset of the injury," and "nothing in the record suggests that N[.B.]'s ITP was due to factors unrelated to the MMR vaccine." *Id.* at 6. Therefore, the Rule 4(c) report indicated that Petitioners were entitled to an award of damages. *Id.*

In light of Respondent's concession, and based on my own review of the record, I find that Petitioners are entitled to compensation for an injury that set forth in the Vaccine Injury Table (*see* 42 C.F.R. § 100.3(b)(2)).

On November 30, 2015, the parties filed a stipulation regarding the amount of Petitioners' compensation. I have reviewed the file, and based upon that review, I conclude that the parties' stipulation (as attached hereto) is reasonable. I therefore adopt it as my decision in awarding damages on the terms set forth therein.

The stipulation awards:

- A lump sum of $157,192.60, which amount represents compensation for first year life care expenses ($7,192.60) and pain and suffering ($150,000.00), in the form of a check payable to Petitioners as guardian(s)/conservator(s) of the estate of N.B. for the benefit of N.B. No payment shall be made until Petitioners provide Respondent with documentation that they have been appointed as guardian(s)/conservator(s) of N.B.'s estate;

- A lump sum of $6,535.99, which amount represents compensation for past reimbursable expenses, in the form of a check payable to Petitioners, Bisser A. Borisoff and Melanie B. Borrisoff; and

- An amount sufficient to purchase the annuity contract described in Paragraph 10 of the attached stipulation, paid to the life insurance company from which the annuity will be purchased.

Stipulation ¶ 8. This amounts represents compensation for all damages that would be available under Section 15(a) of the Act.

I approve a Vaccine Program award in the requested amounts set forth above to be made to

Petitioners. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

BISSER A. BORISOFF and
MELANIE B. BORISOFF, Parents of
N.B., a minor,

          Petitioners,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

          Respondent.
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

No. 13-79V (ECF)
SPECIAL MASTER
BRIAN H. CORCORAN

STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of their son, N.B., petitioners filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to N.B.'s receipt of the measles-mumps-rubella ("MMR") vaccine, which vaccine is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. N.B. received an MMR immunization on or about February 2, 2010.

3. The vaccine was administered within the United States.

4. N.B. sustained the first manifestation or onset of idiopathic thrombocytopenic purpura ("ITP") within the time period set forth in the Table, and suffered the residual effects of this injury for more than six months.

5. There is not a preponderance of evidence that N.B.'s ITP is due to factors unrelated to his February 2, 2010 MMR vaccination.

6. Petitioners represent that there has been no prior award or settlement of a civil action for damages on behalf of N.B. as a result of his condition.

7. Respondent filed her Vaccine Rule 4(c) Report stating that N.B. is entitled to compensation under the terms of the Vaccine Program. Therefore, a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioners have filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

a. A lump sum of $157,192.60, which amount represents compensation for first year life care expenses ($7,192.60) and pain and suffering ($150,000.00), in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of N.B. for the benefit of N.B. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of N.B.'s estate;

b. A lump sum of $6,535.99, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioners, Bisser A. Borisoff and Melanie B. Borisoff; and

c. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

a.      A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

b.      Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

c.      Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

2

    d.      Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of N.B., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioners, as the court-appointed guardian(s)/conservator(s) of the estate of N.B. for the following items of compensation:

a. For future unreimbursable Affordable Care Act expenses, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $2,000.00 to be paid up to the anniversary of the date of judgment in year 2074, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

b. For future unreimbursable Medicare Part D expenses, beginning on the anniversary of the date of judgment in year 2074, an annual amount of $84.24 to be paid for the remainder of N.B.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

c. For future unreimbursable Pediatrician/Primary Care Physician, Hematologist, Hospitalization, CAT Scan/MRI, and Thrombin expenses, beginning on the first anniversary of the date of judgment, an annual amount of $410.00 to be paid up to the anniversary of the date of judgment in year 2020. Then, on the anniversary of the date of judgment in year 2020, a lump sum of $430.00. Then, beginning on the anniversary of the date of judgment in year 2021, an annual amount of $410.00 to be paid up to the anniversary of judgment in year 2025. Then, on the anniversary of the date of judgment in year 2025, a lump sum of $430.00. Then, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $350.00 to be paid up to the anniversary of judgment in year 2028. Then, beginning on the anniversary of the date of judgment in year 2028, an annual amount of $90.00 to be paid up to the anniversary of judgment in year 2031. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $70.00. Then, on the anniversary of the date of judgment in year 2032, a lump sum of $90.00. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $70.00 to be paid up to the anniversary of judgment in year 2035. Then, on the anniversary of the date of judgment in year 2074, a lump sum of $535.00. Thereafter, beginning on the anniversary of the date of judgment in year 2075, an annual amount of $175.00 to be paid for the remainder of N.B.'s life, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

d. For future unreimbursable Dentist expenses, beginning on the first anniversary of the date of judgment, an annual amount of $120.00 to be paid for the remainder of N.B.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

3

e. For future unreimbursable Counselor, Bath Mat, Helmet, Supply, Medical Alert Bracelet, Cold Compress, YMCA, Primary Care Physician Mileage, Hematologist Mileage, Future Specialist Mileage, Counselor Mileage, and YMCA Mileage expenses, beginning on the first anniversary of the date of judgment, an annual amount of $554.91 to be paid up to the anniversary of the date of judgment in year 2019. Then, on the anniversary of the date of judgment in year 2019, a lump sum of $857.93. Then, beginning on the anniversary of the date of the date of judgment in year 2020, an annual amount of $556.47 to be paid up to the anniversary of the date of judgment in year 2022. Then, on the anniversary of the date of judgment in year 2022, a lump sum of $380.55. Then, on the anniversary of the date of judgment in year 2023, a lump sum of $588.20. Then, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $293.00 to be paid up to the anniversary of the date of judgment in year 2026. Then, on the anniversary of the date of judgment in year 2026, a lump sum of $269.54. Then, on the anniversary of the date of judgment in year 2027, a lump sum of $624.74. Then, beginning on the anniversary of the date of the date of judgment in year 2028, an annual amount of $312.68 to be paid up to the anniversary of the date of judgment in year 2031. Then, beginning on the anniversary of the date of judgment in year 2031, an annual amount of $304.86 to be paid up to the anniversary of the date of judgment in year 2033. Then, on the anniversary of the date of judgment in year 2033, a lump sum of $600.06. Then, on the anniversary of the date of judgment in year 2034, a lump sum of $314.06. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $312.50 to be paid up to the anniversary of the date of judgment in year 2070. Then, beginning on the anniversary of the date of judgment in year 2070, an annual amount of $303.30 to be paid up to the anniversary of the date of judgment in year 2074. Thereafter, beginning on the anniversary of the date of judgment in year 2074, an annual amount of $67.38 to be paid for the remainder of N.B.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

f. For future unreimbursable Home Care expenses, beginning on the first anniversary of the date of judgment, an annual amount of $5,760.00 to be paid up to the anniversary of the date of judgment in year 2021, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

g. For future unreimbursable Ancillary Service expenses, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $800.00 to be paid up to the anniversary of the date of judgment in year 2080, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may

be provided to the petitioners in monthly, quarterly, annual or other installments. The "annual

amounts" set forth above describe only the total yearly sum to be paid to the petitioners and do

not require that the payment be made in one annual installment. The petitioners will continue to

4

receive the annuity payments from the Life Insurance Company only so long as N.B. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services and the Life Insurance Company shall be provided within twenty (20) days of N.B.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioners and their attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or

5

State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, and past unreimbursed expenses, the money provided pursuant to this Stipulation will be used solely for the benefit of N.B. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioners represent that they presently are, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of N.B.'s estate under the laws of the State of Florida. No payments pursuant to this Stipulation shall be made until petitioners provide the Secretary with documentation establishing their appointment as guardian(s)/conservator(s) of N.B.'s estate. If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of N.B. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of N.B. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioners, in their individual capacities and as legal representatives of N.B., on behalf of themselves, N.B., and his heirs, executors, administrators, successors or assigns, do forever irrevocably and

6

unconditionally release, acquit and discharge the United States and the Secretary of Health and

Human Services from any and all actions or causes of action (including agreements, judgments,

claims, damages, loss of services, expenses and all demands of whatever kind or nature) that

have been brought, could have been brought, or could be timely brought in the Court of Federal

Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et

seq., on account of, or in any way growing out of, any and all known or unknown, suspected or

unsuspected personal injuries to or death of N.B. resulting from, or alleged to have resulted from,

any of the vaccinations administered on February 2, 2010, as alleged by petitioners in a petition

for vaccine compensation filed on or about January 30, 2013, which was amended on September

9, 2013, in the United States Court of Federal Claims as petition No. 13-79V.

18. If N.B. should die prior to entry of judgment, this agreement shall be voidable upon

proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms

of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a

decision that is in complete conformity with the terms of this Stipulation, then the parties'

settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and

damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except

as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the

parties hereto to make any payment or to do any act or thing other than is herein expressly stated

and clearly agreed to. The parties further agree and understand that the award described in this

Stipulation may reflect a compromise of the parties' respective positions as to liability and/or

7

amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioners hereby authorize respondent to disclose documents filed by petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. All rights and obligations of petitioners hereunder shall apply equally to petitioners' heirs, executors, administrators, successors, and/or assigns as legal representatives of N.B..

END OF STIPULATION

8

Respectfully submitted,

PETITIONER:

_____
BISSER A. BORISOFF

PETITIONER:

_____
MELANIE B. BORISOFF

ATTORNEY OF RECORD FOR
PETITIONERS:
                        by Joseph Pepper
_____  Rule 83.1(c)(2)
RONALD C. HOMER, ESQ.
Conway, Homer & Chin-Caplan, P.C.
16 Shawmut Street
Boston, MA 02116
(617) 695-1990

AUTHORIZED REPRSENTATIVE
OF THE ATTORNEY GENERAL:

_____
VINCENT J. MATANOSKI
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:

_____
A. MELISSA HOUSTON M.D., M.P.H., FAAP
Director, Division of Injury Compensation
Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

ATTORNEY OF RECORD FOR
RESPONDENT:

_____
GLENN A. MACLEOD
Senior Trial Counsel
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-4122

Dated: 11/30/15

9